UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| NORMA MILLER, | ) |
| Plaintiff, | ) Case No. CV 04-04994 AJW |
| v. | ) MEMORANDUM OF DECISION |
| JO ANNE B. BARNHART, Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's applications disability insurance benefits and supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Proceedings**

The parties are familiar with the procedural facts, which are undisputed and are summarized in the Joint Stipulation. [See JS 2-3]. Plaintiff contends that Administrative Law Judge Edward C. Graham (the "ALJ") failed to offer specific and legitimate reasons for rejecting the opinions of plaintiff's treating mental health professionals and improperly evaluated the credibility of her subjective complaints, and therefore that the ALJ erred in finding that

plaintiff's anxiety and depression do not preclude her from performing her past relevant work as an accounting clerk. [See JS 2-3; Administrative Record ("AR") 19-20].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or if it is based on the application of incorrect legal standards. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). Substantial evidence is more than a mere scintilla but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Thomas, 278 F.3d at 954. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (quoting Consolidated Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)); Thomas, 278 F.3d at 954. The court is required to review the record as a whole, and to consider evidence detracting from the decision as well as evidence supporting the decision. Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Discussion**

**Treating source opinions**

Plaintiff contends that the ALJ failed to offer specific and legitimate reasons for rejecting the opinions of Debra Levy, plaintiff's treating therapist at San Pedro Mental Health Center ("SPMH") , and Marina Bhumitra, M.D., plaintiff's treating psychiatrist at SPMH.

Plaintiff sought mental health treatment for anxiety and depression from her physicians at Peninsula Family Health Associates beginning in 1998, after her sister died and her sister's son, who had cerebral palsy, died a week later. [AR 163, 228-229, 240]. Her symptoms improved with medication [AR 136-163], but she reported acute anxiety attacks, depression and grief after the death of her 25 year-old daughter during childbirth in August 1999. [AR 122-135]. She was prescribed Paxil and Ativan, and in September 2000 she was referred by

1  her primary care physician for psychological treatment in addition to medication to help
2  manage her chronic anxiety and depression. [AR 116; see AR 115-125]. Plaintiff began
3  receiving therapy from Cynthia Campbell. [AR 51, 113, 229]. Her medications were changed,
4  first to Wellbutrin and subsequently to Effexor and Xanax. [AR 104-113].

5  In February 2001, plaintiff began treatment with Dr. John Moeller, a psychiatrist, who
6  diagnosed her with major depression and prescribed Effexor and Xanax. [AR 51, 220-224].
7  Plaintiff reported that she had anxiety attacks, depression, insomnia, "no energy," and did not
8  want to leave the house. [AR 221]. She stated that her mother had died in childbirth at the
9  age of 19, when plaintiff was not yet two. [AR 221]. Plaintiff said that she had been raised by
10 a friend of her grandmother's and had been sexually abused as a child. [AR 222]. She had been
11 married and divorced three times. [AR 222]. Plaintiff reported that she had been laid off in
12 September 2002. [AR 222]. She lived with her son's family. [AR 222].

13  Plaintiff saw Dr. Moeller at regular intervals for medication management. [AR 210-224].
14 In April 2001 she reported that she was doing "ok" and that her mood was "pretty good." [AR
15 218]. In September 2001 she said her mood was "ok," but that Effexor caused excessive
16 sweating. [AR 215]. Another medication was added, and she was diagnosed as stable in January
17 2002. [AR 213]. Her Effexor dosage was tapered downward, but was increased when she
18 reported three panic attacks in February 2002. [AR 210-211]. She stopped seeing Dr. Moeller
19 when her insurance lapsed, some time in 2002. [AR 224, 260].

20  Plaintiff subsequently "went to general relief to see if they could help me." [AR 260]. In
21 December 2002, plaintiff began receiving mental health treatment at SPMH, a Los Angeles
22 county mental health clinic. Ms. Levy, a marriage and family therapist, conducted an initial
23 assessment of plaintiff consisting of a history and mental status examination, and Dr. Bhumitra
24 also completed a physician's evaluation form. [AR 228-233, 244]. Plaintiff told Ms. Levy that
25 her father died in 1992, her sister and her nephew died in 1997, and plaintiff was divorced
26 shortly thereafter. She said she felt increasingly depressed after each loss but returned to work
27 in each instance and functioned reasonably well. After her daughter's death, however, she "fell
28 apart" and said it was increasingly difficult for her to function at work. She started having panic

3

1  attacks with shortness of breath, chest pain, palpitations, and other symptoms. [AR 228, 233, 240].

2  Ms. Levy diagnosed panic disorder with agoraphobia and chronic, severe major depressive disorder, single episode, without psychotic features. [AR 233]. She assigned plaintiff a current year Global Assessment of Function score of 40, signifying a major impairment in several areas. [AR 233]. See The American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders Multiaxial Assessment 32 (4th ed. 1994)(revised 2002). Ms. Levy recommended that plaintiff receive psychotherapy and medication. [AR 233]. Dr. Bhumitra prescribed Celexa and Ativan, and she added Risperdal when plaintiff continued to have anxiety attacks. [AR 241-242]. From December 2002 through the date of the hearing, plaintiff was seeing Dr. Bhumitra twice a month for medication management and Ms. Levy twice a month for individual psychotherapy. [AR 234-244, 261-263].

In April 2003, Dr. Bhumitra signed an evaluation form for mental disorders in which she provided detailed narrative responses to questions regarding plaintiff's history, symptoms, mental status examination results, current level of functioning, current medications, diagnosis, and prognosis. [AR 224-227]. Her diagnoses were the same as those initially assessed by Ms. Levy: panic disorder with panic disorder with agoraphobia and chronic, severe major depressive disorder, single episode, without psychotic features. She opined that plaintiff's condition might improve, but that she was likely to require another year or more of treatment before there was significant improvement. [AR 227]. Dr. Bhumitra commented that plaintiff

> is a women who has suffered a series of major and traumatic losses, beginning with the death of her own mother when she was 18 months old and culminating in the death of her daughter in 1999. In addition, this patient suffered repeated sexual assaults at the hands of those who were supposed to be caring for her from age 4 to age 10. Repeated traumas have sensitized her and eroded her coping abilities. Since her daughter's death, the patient has become so depressed and so fearful that she has been immobilized and her cognitive functioning has declined markedly. She cannot work at this time, has been unable to do so and has

4

>required treatment since 1999, and will require ongoing treatment and medication to recover and to function adequately once more.

[AR 227].

**Dr. Bhumitra**

The ALJ rejected Dr. Bhumitra's assessment in favor of the opinions of the Commissioner's examining physician, Dr. Nora Paculdo, and the non-examining state agency physicians. Where, as here, the opinion of a treating source is contradicted by that of another treating or examining source, the treating source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Tonapetyan v. Halter, 242 F.3d 1144, 1148-49 (9th Cir. 2001); Nguyen v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996); Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

The ALJ rejected Dr. Bhumitra's opinion because "[t]here are no treating notes from Dr. Bhumitra as her treatment of the claimant consisted solely of medication management." [AR 18]. That is a somewhat misleading characterization of the record. Dr. Bhumitra completed an initial written evaluation assessing plaintiff's complaints, history, and current medications. [AR 244]. She prescribed medication and maintained a medication log noting plaintiff's subjective symptoms, therapeutic response to medication, and prescribed medications with dosages. [AR 241-242]. Dr. Bhumitra also dated and signed entries in plaintiff's progress notes referring the reader to her medication log. On the same pages are found Ms. Levy's notes of her therapy sessions with plaintiff. [AR 234-240].

It is not accurate to say that there were "no treating notes from Dr. Bhumitra" because there are treating notes reflecting her role as the physician who prescribed plaintiff's medications and monitored their effectiveness. In her notes, Dr. Bhumitra wrote that plaintiff's medications were "helpful," but that observation is not necessarily inconsistent with her conclusion that plaintiff remained unable to work. [AR 18]. Dr. Bhumitra further noted that plaintiff still was having frequent anxiety attacks, that plaintiff was fearful of taking new prescribed medications because she was present when her daughter died of an anesthesia overdose during childbirth, that plaintiff reported "severe anxiety/panic," and that plaintiff was having panic attacks,

recurrent memories of her own molestation, and insomnia. [AR 241-242, 244; see AR 240, 253]. Thus, contrary to the ALJ's assertion, Dr. Bhumitra did record "ongoing observations of the claimant," and those observations, although limited in scope, cannot fairly be said to contradict her opinion that plaintiff had disabling emotional problems.

The ALJ also appears to have assumed that because Dr. Bhumitra did not directly participate in plaintiff's therapy sessions with Ms. Levy, Dr. Bhumitra could not permissibly rely on Ms. Levy's treatment notes or impressions in evaluating plaintiff. The Ninth Circuit, however, has held that a psychiatrist who saw the claimant only once for an initial evaluation, and who then "continued managing her psychiatric medications and consulted regularly with her treating therapists," was not precluded from qualifying as a treating physician whose disability opinion was entitled to controlling weight. Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1033-1041 (9th Cir. 2003). In Benton, the court noted that whether a treatment relationship exists depends, among other things, on "whether the nature and frequency of the treatment or evaluation is typical" for a claimant's condition. Benton, 331 F.3d at 1035 (quoting 20 C.F.R. § 404.1502). The court observed that it had become increasingly common for a psychiatrist with prescription privileges to "manage the provision of psychiatric medication, receiving reports from the medical sources providing hands-on' treatment, without seeing the patient with any regularity." Benton, 331 F.3d at 1035. In keeping with this reality, the Ninth Circuit held that "emerging patterns of medical treatment that make a psychiatrist responsible for prescribing and monitoring medication, but leave most of the direct patient contact to others within a treatment team, allow the psychiatrist to be a 'treating source' either on his own behalf or on that of the treatment team[.]" Benton, 331 F.3d at 1035, 1041 (remanding for a determination whether the psychiatrist's "treatment relationship, individually and as a representative of a treatment team, was consistent with accepted medical practice for the type of treatment required for [the claimant's] medical condition," and if so, whether his opinion is entitled to controlling weight).

In Benton, the psychiatrist who managed the claimant's medications had not personally examined the claimant in over a year when he rendered his disability opinion, but that lapse

6

was not dispositive because he was "transmitting both his own knowledge and opinion of" the claimant based on his "ongoing prescription and medication management" and the knowledge and opinions

> of the medical treatment team under his supervision. Even if he were not entitled to complete the Mental RFC Assessment based upon his own direct experience with a patient, nothing in the language of § 404.1502 forecloses his doing so on behalf of his treatment team. This is not the same as evaluating [the claimant's] case from the cold record; [the psychiatrist] has had the opportunity to direct and communicate with the treatment team over time, and is presumably well placed to know their skills, abilities, and therapeutic techniques. In assigning weight to [the psychiatrist's] opinion, the ALJ may of course consider how well the treatment team operated in informing [him].

Benton, 331 F.3d at 1039.

The record in this case indicates that Dr. Bhumitra was relying on both her own observations and conclusions and on those of Ms. Levy. The ALJ either failed to consider whether Dr. Bhumitra permissibly could base her opinion in part on Ms. Levy's observations, or he assumed that since Dr. Bhumitra did not participate directly in those therapy sessions, she could not properly do so. In either instance the ALJ erred, and moreover the record is not sufficiently developed to permit a proper resolution of the question whether, and to what extent, Dr. Bhumitra's opinion permissibly was based on Ms. Levy's input. See Benton, 331 F.3d at 1041; see also Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (holding that the ALJ erred in speculating that the treating physician's opinion was based on unwarranted assumptions without "conduct[ing] an appropriate inquiry," such as by subpoenaing the physician, submitting further questions to him, or continuing the hearing to augment the record) (citing 42 U.S.C. § 405(d) and 20 C.F.R. §§ 404.950(d), 404.944, & 404.1527(c)(3)).[1]

---

[1] The two other reasons given by the ALJ are not sufficiently specific and convincing to justify his rejection of Dr. Bhumitra's opinion. The ALJ pointed to plaintiff's testimony that her treatment at SPMH was helping her "tremendously" [AR 18, 260-

7

**Ms. Levy**

The ALJ rejected the GAF score of 40 given by Ms. Levy because she is not an "acceptable medical source" and because her assessment was "based on a one-time evaluation without the benefits of treatment." [AR 18]. The Commissioner's consultative physicians routinely assess disability claimants based on a one-time evaluation. That may be a reason for giving their opinions relatively less weight than the opinions of treating physicians, but it is not a reason for rejecting examining source opinions outright, and the same is true for Ms. Levy's opinion. Otherwise, the ALJ would be barred from relying as he did on the opinion of the Commissioner's "one-shot" psychiatric examiner, Dr. Paculdo.

The question whether the ALJ may reject Ms. Levy's opinion because she is not an "acceptable medical source" is more nuanced. The Commissioner's regulations distinguish between evidence from "acceptable medical sources" and evidence from "other sources" (which may be medical or non-medical). See 20 C.F.R. §§ 404.1513(a)&(d), 416.913(a)&(d). Licensed physicians and licensed or certified psychologists are "acceptable medical sources," while mental health professionals such as therapists are "other sources." 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). Evidence from "acceptable medical sources" is required to show the existence of a medically determinable impairment, and the opinions of "other sources" may be given less weight than evidence from "acceptable medical sources." See 20 C.F.R. § 404.1513(a)&(d), 416.913(a)&(d); Gomez v. Chater, 74 F.3d 967, 970-971 (9th Cir.), cert. denied, 519 U.S. 881 (1996). That does not mean that evidence from "other sources" is entitled to no weight. The governing regulations state that such evidence may be used to show

---

261], but failed to acknowledge that plaintiff also testified that she continued to experience disabling symptoms and functional limitations. [AR 252-258]. The ALJ said that Dr. Bhumitra's "opinion of markedly declined cognitive functioning is grossly inconsistent with the examination findings from Dr. Paculdo," the Commissioner's consultative examiner. [AR 18]. Inconsistency between a treating physician's opinion and that doctor's own findings is a factor the ALJ may consider, and the degree of consistency between a medical opinion and the record as a whole also may be considered. However, a treating physician's opinion cannot be rejected simply because an examining physician made a conflicting finding in one area of mental functioning.

the severity of a claimant's impairment and how it affects the claimant's ability to work, 20 C.F.R. §§ 404.1513(a)&(d), 416.913(a)&(d), and the Commissioner's policy guidelines explain that evidence from other sources

> may play a vital role in the determination of the effects of impairment. To arrive at an overall assessment of the effects of mental impairment, relevant, reliable information, obtained from third party sources such as social workers, previous employers, family members, and staff members of halfway houses, mental health centers, and community centers, may be valuable in assessing an individual's level of activities of daily living.

See SSR 85-16, 1985 WL 56855, *3-*4.

In addition, the Ninth Circuit has held that a medical "other source" may be considered on a par with an "acceptable medical source" in some circumstances. In Gomez, the court held that "a nurse practitioner working in conjunction with a physician constitutes an acceptable medical source, while a nurse practitioner working on his or her own does not." Gomez, 74 F.3d at 971. Psychotherapists, like nurse practitioners, are identified as medical "other sources." See 20 C.F.R. § 404.1513(d)(1). Therefore, a psychotherapist such as Ms. Levy who works in conjunction with a physician may be equivalent to an acceptable medical source.

Under Benton and Gomez, the record must be developed further with respect to whether Dr. Bhumitra and Ms. Levy are members of a treatment team, the weight that should be given to Dr. Bhumitra's treating source opinion, and whether Ms. Levy herself may be an acceptable medical source by virtue of her working relationship with Dr. Bhumitra in treating plaintiff.

**Subjective symptom complaints**

Plaintiff contends that the ALJ did not give legally sufficient reasons for rejecting her subjective complaints.

Once a disability claimant produces evidence of an underlying physical or mental impairment that is reasonably likely to be the source of her subjective symptoms, the adjudicator is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345

(9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Although the ALJ may then disregard the subjective testimony he considers not credible, he must provide specific, convincing reasons for doing so. Tonapetyan, 242 F.3d at 1148; see also Moisa, 367 F.3d at 885 (stating that in the absence of evidence of malingering, an ALJ may not dismiss the subjective testimony of claimant without providing "clear and convincing reasons"). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885. If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

In evaluating subjective symptom testimony, the ALJ must consider "all of the evidence presented," including the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain and other symptoms; (3) precipitating and aggravating factors, such as movement, activity, and environmental conditions; (4) the type, dosage, effectiveness and adverse side effects of any pain medication; (5) treatment, other than medication, for relief of pain or other symptoms; (6) any other measures used by the claimant to relieve pain or other symptoms; and (7) other factors concerning the claimant's functional restrictions due to such symptoms. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); see also Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *3 (clarifying the Commissioner's policy regarding the evaluation of pain and other symptoms). The ALJ also may employ "ordinary techniques of credibility evaluation," considering such factors as (8) the claimant's reputation for truthfulness; (9) inconsistencies within the claimant's testimony, or between the claimant's testimony and the claimant's conduct; (10) a lack of candor by the claimant regarding matters other than the claimant's subjective symptoms; (11) the claimant's work record; and (12) information from physicians, relatives, or friends concerning the nature, severity, and effect of the claimant's symptoms. See Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997); Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989).

The ALJ rejected plaintiff's subjective complaints of disabling anxiety and depression because he concluded that her complaints were not consistent with the treatment she received or her daily activities. The ALJ said that plaintiff's treatment was inconsistent because she did not receive ongoing individual therapy until she began seeing Ms. Levy in December 2002. That statement, however, is incorrect because the medical records indicate that plaintiff was referred for and underwent therapy with Cynthia Campbell as early as November 2000, shortly after her alleged onset date, and she continued to see her at least into 2001. [AR 51, 113, 229]. Plaintiff sought psychiatric treatment from her primary care doctor and then from Dr. Moeller in the two years or so before she was referred for therapy. [AR 51-52, 259-260]. During that period she was prescribed anti-anxiety and anti-depressant medication, but her symptoms persisted. When her insurance lapsed in 2002 her psychiatric treatment also lapsed, but by the end of that year she had gone to general relief for help and was seeing Dr. Bhumitra and Ms. Levy at SPMH. Accordingly, there was no telling lack of treatment, or lack of effort to obtain treatment, on plaintiff's part.

The ALJ also faulted plaintiff for looking after her grandchildren, but she said she did "not actually babysit," but rather helped her daughter-in-law, who was at home, to care for the six children, who ranged in age from one to fifteen years old. [AR 255, 263]. Plaintiff testified that she had a great deal of anxiety related to leaving the house, and that even when she felt she wanted to escape from the noise and activity of her grandchildren, she really had no independent means of doing so. [AR 222, 253-257, 262-264]. It is difficult to understand how helping with grandchildren contradicts the particular symptoms of anxiety, panic attacks, fearfulness, depression, and lack of concentration that plaintiff chiefly alleged. [AR 222, 253-257, 262-264]. The ALJ noted that plaintiff had gone with relatives to Nevada in December 2002 and March 2003, but plaintiff said her siblings talked her into it, she stayed in their condominium, and that she had felt the need to get away from her grandchildren for awhile. [AR 262-264]. In her contemporaneous progress notes, Ms. Levy wrote that plaintiff "forced herself to go with relatives to a family gathering in Nevada, and she had a pleasant time, but it was very difficult to get herself under way," and she had a full-blown anxiety attack during

the night while on the trip. [AR 237].

Because the record indicates that plaintiff obtained psychiatric treatment commensurate with her alleged impairments and that her activities are not inconsistent with her alleged symptoms, the ALJ's credibility evaluation is not supported by substantial evidence in the record.

## Conclusion

The ALJ erred in evaluating the opinions of Dr. Bhumitra and Ms. Levy and in assessing the credibility of plaintiff's subjective symptoms. Because it is not clear that plaintiff must be awarded benefits, the record needs further development. Accordingly, the Commissioner's decision is **reversed**, and this case is **remanded** to the Commissioner for further administrative proceedings and a new hearing decision. See Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003) (stating that the court has discretion not to require the "crediting as true" of testimony rejected for insufficient reasons); Bunnell v. Barnhart, 336 F.3d 1112, 1115-1116 (9th Cir. 2003)(reversing and remanding for further proceedings where the ALJ did not properly reject the claimant's subjective complaints and other evidence but several "outstanding issues" remained to be resolved).

**IT IS SO ORDERED.**

DATED: November 9, 2005

/S/
_____
ANDREW J. WISTRICH
United States Magistrate Judge

12